Lucy Allan, widow of Ebenezer Allan, *against* Smith.

Count in dower, *unde nihil habet.*

Declaration, in dower, *unde nihil habet*, for " one-third part of 7 messuages, 7 barns, 7 stables, 7 gardens, 7 orchards, 100 acres of land, 100 acres of arable land, 100 acres of meadow land, 100 acres of pasture land, 100 acres of wood land, and 100 acres of land covered with water, with the appurtenances, in the town of *Gates*, in the county of *Monroe*."

General imparlance.

General imparlance from *January* to *May* term last, when the following pleas were interposed :

1st. Plea, that the husband aliened in his life time ;

" And the said *Silas Smith*, by *Charles G. Troup*, his attorney, comes, and, as to part of the 100 acres of land, with the appurtenances, in the demand aforesaid, above specified, says, that the said part of the 100 acres of land, with the appurtenances, was a part of a tract of 100 acres, which the said *Ebenezer*, late husband of the said *Lucy*, in his life time, to wit, on the 21st day of *March*, A. D. 1792, at *Gates*, aforesaid, by his certain deed, which the said *Silas* sealed

with the seal of the said *Ebenezer*, here in Court doth bring, (the date whereof is the day and year aforesaid,) in consideration of the sum of 500*l.* current money of the state of *New-York*, conveyed, with the appurtenances, to *Benjamin Barton*, and to his heirs and assigns forever, as by the same deed more fully appears; and that since the said conveyance, the said part of the said tract has been laid out into village lots and pieces of ground, forming part of the village of *Rochester;* and the said part of the said tract of 100 acres, is distinguished on a map of part of said village of *Rochester*, made by *Nathaniel Rochester*, and annexed to a certain deed of conveyance, to which *Charles Carrol, William Fitzhugh*, and the said *Nathaniel Rochester* are parties, and bearing date the 13*th* day of *August*, A. D. 1817, and which deed and map are recorded in the Clerk's office of the county of *Monroe*, as lots numbered in the said maps respectively, with the numbers 32, 33, 51 and 89, and contain, each lot, about one-fourth of an acre of ground; and that the said part of the said tract has greatly risen in value, since the conveyance of the said tract as aforesaid, to wit, to the value of 2000 dollars; and great and valuable improvements have been made upon it, to wit, to the value of 3000 dollars; and the said *Silas* avers, that from the death of the said *Ebenezer*, late husband of the said *Lucy Allan*, he the said *Silas* hath always been ready, and still is ready, to render to the said *Lucy*, her dower of the same, according to the value, state and condition thereof, at the time of the alienation and conveyance aforesaid, by the said *Ebenezer*, to the said *Benjamin*, and rendereth the same here in Court to the said *Lucy;* and this he is ready to verify, &c.

" And as to 7 messuages, 7 barns, 7 stables, 7 gardens, 7 orchards, and residue of the said 100 acres of land; and as to 100 acres of arable land, 100 acres of meadow land, 100 acres of pasture land, 100 acres of wood land, and 100 acres of land covered with water, with the appurtenances, in the said demand specified, he the said *Silas* says, that the said *Silas* cannot render to the said *Lucy*, her dower thereof, or any part thereof, because he saith, that he, the said *Silas*, is not, nor on the day of the commencement of the said suit

UTICA,
August, 1823.

ALLAN
v.
SMITH.

And *tout temps pris*, &c. as to part, &c.

2d. And as to the residue, non tenure, &c.

UTICA,
August, 1823.

ALLAN
v.
SMITH.

And as to that, prays judgment of the writ, &c.

3d. *Ne unques accouple en loyal matri- monie.*

Plea of *non tenure* was verified by affidavit.

A plea of *alienation*, and *tout temps pris*, under the statute (*sess.* 29, *ch.* 168, *s.* 1, 1 *R. L.* 60) may be pleaded after a general imparlance.

So of *non tenure. El semble*, that since the statute allowing the defendant to plead several pleas, one of them being pleadable after imparlance, would draw after it others, which may therefore be pleaded af-

of the said *Lucy*, or at any time since, has been tenant thereof, or of any part thereof, as of the freehold ; and this he is ready to verify . wherefore, as to the said 7 messuages, 7 barns, 7 stables, 7 gardens, 7 orchards, and residue of the said lands, he prays judgment of the said writ, &c.

"And the said *Silas* for further plea in this behalf, by leave of the Court here first had and obtained, says, that the said *Lucy* ought not to have her dower in this behalf, as having been the wife of the said *Ebenezer*, deceased, because he says, that the said *Lucy* never was accoupled to the said *Ebenezer*, deceased, in lawful matrimony, and this the said *Silas* is ready to verify ; and therefore he prays judgment, if the said *Lucy* ought to have her dower of the messuages, barns, stables, gardens, orchards, and lands aforesaid, with the appurtenances.

*Charles G. Troup,* Att'y for tenant.
*Nat. W. Howell,* of Counsel."

The plea of *non tenure,* being a dilatory plea, was verified by affidavit pursuant to law, (*sess.* 36, *ch.* 56, *s.* 23, 1 *R. L.* 524,) thus :

" *Silas Smith,* of the village of *Rochester*, in the county of *Monroe,* merchant, maketh oath and saith, that the plea of *non tenure,* hereunto annexed, is true in substance and fact."

It appeared by an affidavit on the part of the tenant, that the declaration was intended to embrace 100 acres, a part of the present village of *Rochester,* now possessed by a great number of persons, and worth a large sum of money, which *Allan,* the reputed husband of the demandant, aliened in his life time for the consideration of 500*l. New-York* currency, then being the fair value, (A. D. 1792.) The tenant, at the commencement of the suit, owned 4 village lots, amounting to one acre only, being a part of the said 100 acres ; the said 1 acre being now worth about $12,000, but which he bought at less than $400 : that the plea of *ne unques accouple* would probably involve some nice questions of law, but his chief dependence was on the plea of *non tenure,* and *alienation,* with *tout temps pris, &c.*

*C. M. Lee*, now moved to set aside the pleas of *tout temps pris* and *non tenure*. He said, 1st, that great strictness is necessary as to the *time* of pleading *tout temps pris*. It cannot be pleaded except by the heir or alience of the husband; for, as every other person comes in after the husband's death, he cannot, for that reason, say *tout temps pris*. (2 *H.* 4. 7. *Br. tout temps pris, pl.* 34. *Vin. Abr. dower, (M. a.) pl.* 13. 20 *Vin. tout temps pris,* (*B*) *pl.* 2.) Again, it is agreed in all the books, that this plea cannot be interposed after any kind of imparlance. The reason is plain. An imparlance is for time to answer, *because* the party is *not ready*. Yet, by this plea, he comes in and says that he *is ready*, in direct contradiction to what he has before said in terms; thus introducing a palpable contradiction upon the record.— And this is pleaded, too, not after a *special* or a *general special* imparlance, but after a *general imparlance*, which narrows the defendant down to the least latitude, in the selection of his pleas. If it could be pleaded after any other imparlance, it is certainly inadmissible after a general one. He referred, also, to 2 *Jac. L. D.* 322, *tit. Dower.* 5 *id.* 174, *title, Pleading,* I. 1, 3, 4. *Co. Litt.* 32, *b.* An imparlance estops the tenant, in an action of dower, to say *tout temps pris.* (5 *E.* 4. 141. *Br. tout temps pris, pl.* 27. 20 *Vin. tout temps pris,* (B) *pl.* 5.) Indeed, this has never been controverted in any case. Nor can the oldness of these authorities be objected against us; for the reason of the law still exists, in its full force. The plea is out of time, is frivolous, and altogether inadmissible upon the face of the record; and a motion is the proper course to set it aside.(*a*) We ought not to have resorted to a demurrer, which does not draw in question the time of pleading, but the goodness of the plea itself.

2. The plea of *non tenure* is to a part only of the land. Considered in itself, it is, for that reason, frivolous. *Tout*

UTICA,
August, 1823.

ALLAN
v.
SMITH.

ter imparlance; though standing alone, they would be pleadable only before. *Ne unques accouple,* and *alienation,* with *tout temps pris,* may be pleaded together.

(*a*) In 5 *E.* 4. 141, the demandant *counterpleaded* this matter upon the record; and *Alderne,* J. and *Danby,* Ch. J. held the imparlance an *estoppel* against the tenant, to say that *he was always ready;* and so is the note of this case in *Br.* & *Vin.* cited by the counsel.

UTICA,
August, 1823.

ALLAN
v.
SMITH.

*temps pris* being disposed of, *non tenure* stands alone ; and there is no proposition better settled, than that a plea which professes to be, and is, in fact, an answer to but part, is a nullity. Besides, this plea is altogether inconsistent with that of *ne unques accouple.*

*J. Platt*, contra. The consequences will be most serious to this tenant, if he is to be cut short of these two pleas. At common law, the widow was dowable of one third of the husband's lands. By the action of dower she obtained seisin of her interest, and the process stopped there : she recovered no damages. But by the statute of *Merton*, (20 *H. 3. ch.* 1, adopted in 1 *R. L.* 57, *s.* 2,) she is now to recover damages from the death of the husband, if he dies seized. And on a judgment by default, or an issue of *ne unques accouple*, the demandant may then (as appears by the entries) suggest the husband's seisin at his death, and the jury are to assess full damages, including the mesne profits from that time ; and this for the whole of the land demanded, provided we loose our plea of *non tenure*. (*Saund.* 44-5, *n.* 4. *id.* 330. 1 *Lill. Ent.* 269. *Booth on R. A.* 168-9. *Rast. Ent.* 238, *a. b. Bull. N. P.* 116-17. *Doct. & Stud.* dialogue 2, *ch.* 13. *Co. Litt.* 32 *b.* 2 *Sell.* 210.)(*a*) Then comes the act of *April* 7, 1806, (1 *R. L.* 60.) The 1st section of this statute provides, that dower shall be assigned according to the value of the land, at the time of the alienation. This introduces a new rule, varying the rights of the parties. At common law, the *inherent* rise of the property in value was disregarded ; though otherwise of artificial improvements ; and, in *England*, this rise still enures to the benefit of the widow.(*b*) (*Dorchester* v. *Coventry*, 11 *John.* 510.) Here is a sale for 500*l.* of lands on which a large village has arisen. We have purchased a single acre : yet, deprived of these pleas, we are made to respond in damages for one third of the whole.

Our first answer to this motion is, that the demandant should have demurred. The Court ought not to decide a question so immensely important as this, in a summary way, upon affidavit and motion. Beside, the want of that de-

(*a*) *Vid.* 2 *John. Rep.* 486. 6 *id.* 295-6.

(*b*) *Vid.* 3 *Mass. Rep.* 544.

liberation due to the question here, we are in this form deprived of all chance to appeal. *Humphry* v. *Phinney* (2 *John.* 484.) presents a similar case. The third plea there, was an alienation, &c. and *tout temps pris.* There was also a plea of *ne unques accouple.* In that case the question came up, as it should do here, upon demurrer. The third plea was holden good : Nay, that it was absolutely necessary to resort to such a plea, in order to give effect to the statute of 1806. This plea is unknown to the British books. There is no precedent or principle there, which warrants it. True, it is said by *Kent,* Ch. J. in that case, that this statute was in affirmance of the common law. But there is no precedent for such an assertion ; and *Park on Dower,* 257, expressly contradicts it.

This is not a plea in *abatement.* In *Humphry* v. *Phinney,* it is treated throughout as a plea in *bar.* *Dolf* v. *Basset,* (15 *John.* 22,) follows up the same principle. " It has been settled," say the Court, (*p.* 23) " that dower is to be taken according to the value of the lands at the time of the alienation. (2 *John. Rep.* 484. 11 *id.* 510.) But in what manner, and at what time, that value is to be ascertained, has not been decided. It is barely hinted at in the case of *Humphry* v. *Phinney,* (2 *id.* 484,) and the books do not furnish us with much light on the subject. As it is an inquiry growing, in some measure, out of the statute, the Court has an unquestionable right to adopt such practice as shall seem most expedient."

Here, then, is a new plea, arising from a new principle, steering clear of the ancient books, which have been cited ; and calling upon the Court to adjust it to the rights of the parties, and adapt their practice accordingly. It is *sui generis,* and the old authorities do not apply. The rule relied upon is in *Booth,* 36, " that after a general imparlance, no plea to the writ is to be received." He cites *Keilw.* 93, *b.* and *Palm.* 308. On the same page he says that imparlances are merely days of grace : and in *Haviland* v. *Bond,* (4 *John.* 309) it is decided that it is a matter of course to grant a special imparlance to the next term. Nothing can be said against it. That the imparlance

was not special, is a mere slip. Will the Court enforce this error? They will rather amend the imparlance by turning it into a special one.

But it is said, that *tout temps pris* cannot be pleaded after *any* imparlance. This might be true, if the plea stood alone: It would then be a mere confession, and give judgment to the plaintiff. This is not our case. Important questions of law may arise, and be litigated, under this plea. It is unlike the *English* plea of *tout temps pris*, alone. It is a *compound special plea*. As to a small part, it is a plea of confession. As to the residue, it contests very important rights. The Courts are more liberal now than formerly, in admitting pleas of this nature. Tender, in personal actions, may now be pleaded after imparlance. (1 *Saund.* 33, *n.* 2. *Noone* v. *Smith*, 1 *H. Bl.* 369. *Kilwick* v. *Maidman*, 1 *Burr.* 59.) If this will be allowed in a plain personal action, will not the Court extend the same indulgence to real actions, which are difficult and abstruse? Rules of practice differ from statutes, or the common law. They are flexible and should be applied to circumstances, and to promote fairness and justice. A case of hardship or severity will be relieved against. The rule may be tempered to suit the case.

These pleas are properly joined. None of the authorities cited against us, are, since the statute of *Ann*, allowing double pleading; and which statute we have adopted. (1 *R. L.* 519.) This matter was pleaded double, in *Humphry* v. *Phinney*, and passed without objection.

*Oakley*, in reply. The tenant sets up surprize, and complains of severity in the rules which we seek to enforce against him, while his plea is a nullity on the face of it. He pleads *tout temps pris*, without shewing any colour of right in himself to plead in this manner. He shews the title in *Barton*, and leaves it there; thus admitting that he has no right to assign dower.

The question, whether the plea is in season, rests merely upon *authority*. There is no difference, in this respect, between this plea under our statute and at common law. The only difference is in the effect. Under the former, it confesses the right of action, for the value of the land, at the

time of the alienation. At the common law the action was confessed without regard to the value. The imparlance falsifies the plea in both cases, by shewing that the tenant *has not always been ready*. It is, in both cases, with a view to consider of a defence to the action ; not whether the tenant has always been ready to assign, and surrender the subject of the suit. In *Burdon* v. *Burdon*, (1 *Salk.* 252) it was decided that detinue· of charters cannot be pleaded after imparlance. This is a plea in bar, and goes to the merits ; yet no indulgence is shewn in that case, and none is due to the tenant here. This motion pre-supposes the plea to be valid, independent of the imparlance, and seeks to set it aside as too late. We cannot demur upon this ground. It is the proper subject of a motion to set the plea aside. *It is irregular.*

*Ne unques accouple* is inconsistent with the first plea, and ought, therefore, to be stricken out. The tenant cannot say *tout temps pris*, and yet *ne unques accouple*. The record would be absurd upon the face of it. Judgment for the demandant follows necessarily, from the first. But the tenant is allowed to go to trial, and obtain a judgment on the second, against the demandant. The statute of double pleading never meant to sanction such gross absurdity. It is like pleading the general issue, and giving a cognovit upon the same matter, on the same record. The case of *Humphry* v. *Phinney* arose upon demurrer to the plea. It was not a question as to the time of pleading, or the consistency of the several pleas.

*Curia.* There is an apparent inconsistency between these pleas ; and, indeed, this is the case in almost every instance, under the statute, where the tenant pleads several matters of defence upon the same record. This is generally allowed, as a matter of course ; and, to show the propriety of the practice, in this case, special reasons are assigned, by affidavit, why the plea of *ne unques accouple* should be retained. The plea of *non tenure* may be interposed after an imparlance ; (*Booth*, 36) but it is objected that the plea of *tout temps pris* being irregular and void, this plea of *non tenure* is

UTICA,
August, 1823.

ALLAN
v.
SMITH.

left to stand for a part, and is, therefore, a nullity. This begs the question upon the plea of *tout temps pris;* and it is necessary to decide upon its admissibility, before the objection to the plea of *non tenure* can be entertained : because, taken collectively, they are an answer to the whole cause of action. There is here a peculiar fitness in the plea of *non tenure.* The demandant goes for her dower in 100 acres.   The tenant says, that dower is demandable of him in the one hundredth part only ; and he must, for his own safety, disclaim as to all but the one acre.   The great question, then, is upon the plea of *tout temps pris.*   To this the objection is, that being after a general imparlance, it is thus falsified ; the imparlance being inconsistent with the nature of the plea.   Such is, doubtless, the English doctrine.   But there the widow is entitled to one-third of the land, at its enhanced value, with every thing attached to it, except artificial improvements. Our statute adopts a different rule.   Where the husband has aliened in his life time, it gives only the value of one-third of the land at the time of the alienation.   Hence arises the necessity of pleading the alienation, and averring *tout temps pris.   Humphry* v. *Phinney,* cited by the counsel for the tenant, takes this view of the subject ; and, in our opinion, substantially disposes of this question.   The Court there say, " the plea is proper, in order that the demandant may be obliged to take her judgment specially, according to the *tender ;*" that is to say, *the plea of tender,* by which the tenant says, " I am ready to give you the land, at its value when aliened."   This is the language of the plea.   Again : the Court say, if this mode of pleading is not adopted, " the general judgment, that the demandant recover seisin of one-third part of the premises, according to the count, might, perhaps, preclude the tenant from the benefit of the valuation for which he contends."   Thus, instead of the old technical plea, we have a qualified *tout temps pris,* framed by our own pleaders, for the purpose of giving effect to this new statute ; a plea frequently involving important rights, and introducing a defence which sinks the demandant's claim from a large sum to a mere trifle.   There would seem to be no reason for applying the ancient strictness as to time, ap-

plicable to a plea of mere confession, to one which thus questions a material part of the demand. *The reason of the rule ceases.* Time, by imparlance, is, *in fact*, necessary, as for any other plea. Besides, to make this defence complete, this plea must accompany that of *non tenure*, which may be pleaded after imparlance. Each standing alone, would be an answer to part only. And, indeed, it is doubtful whether an answer to this objection is not to be deduced from the stat- ute of *double pleading*. Some of these pleas being pleadable after imparlance, would seem to draw the others after them, though strictly pleadable only before. The pleas must all be put in at the same time; and, for that reason, perhaps, ought to be placed on the same footing, as to the time of be- ing pleaded.

Motion denied.(c)